UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-205-R

GOLDIE M. MENSER, et al.                                                                           PLAINTIFFS

v.

ILLINOIS CENTRAL RAILROAD COMPANY, et al.                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion to Remand (Docket #15). Defendants have filed a response (Docket #20). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion to Remand is GRANTED.

**BACKGROUND**

This action arises out of the fatality of Deborah Kay Johnson following the November 22, 2005 collision of the all-terrain vehicle ("ATV") operated by Johnson and a train on the railroad bridge spanning Mayfield Creek. Plaintiffs originally filed their Complaint in the Ballard Circuit Court on November 21, 2006, against the Illinois Central Railroad Company ("ICRR") and Unknown Defendants. On December 11, 2006, ICRR removed the action to this Court under 28 U.S.C. § 1446 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. On January 30, 2007, Plaintiffs filed their First Amended Complaint, substituting Defendants Stephen D. Doss and Charles A. Newton for the original Unknown Defendants.

Plaintiffs are both residents of Bardwell, Kentucky. Defendant ICRR is an Illinois corporation. Defendant Doss is a resident of Union City, Tennessee and Defendant Newton is a resident of Clinton, Kentucky.

Plaintiffs filed their Motion to Remand on September 11, 2007.

### STANDARD

Pursuant to 28 U.S.C. § 1446(a), a defendant desiring to remove a civil action from a state court may file a notice of removal in the district court of the United States for the district and division within which such action is pending. The notice of removal shall be filed within thirty days after the receipt by the defendant of a copy of the initial pleading setting forth the claim for relief or within thirty days after the service of summons upon the defendant, whichever period is shorter. 28 U.S.C. § 1446(b). Here, Defendant removed this action on diversity grounds. Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . [c]itizens of different States." A defendant desiring to remove a case based on diversity jurisdiction has the burden of proving the diversity jurisdiction requirements. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993).

### DISCUSSION

Plaintiffs argue that this action must be remanded to the Ballard Circuit Court as complete diversity of citizenship does not exist; Plaintiffs are both citizens of Kentucky as is Defendant Newton. Defendants argue that Plaintiffs fraudulently joined Defendant Newton and that, because of the fraudulent joinder, no true diversity exists in the Amended Complaint.

"Fraudulent joinder of a non-diverse defendant does not defeat removal based upon diversity jurisdiction." *Bishop v. Wal-Mart Stores*, 24 Fed. Appx. 236, 237 (6th Cir. 2001).

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law. . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so

claiming.

*Alexander*, 12 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* (quoting *Bobby Jones*, 391 F.2d at 176).

> [I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the] Court must remand the action to state court. . . [the] court must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation and citation omitted). "[W]hile the determination as to the propriety of removal is based upon the plaintiff's pleadings at the time of removal, the court may pierce the pleadings and consider 'summary judgment-type' evidence such as affidavits and deposition testimony." *Miller v. PPG Indus., Inc.*, 237 F. Supp. 2d 756, 759 n.9 (W.D. Ky. 2002) (quotation omitted).

Defendant Newton was the conductor of the train at the time of the collision. During the collision Defendants Doss and Newton were up front in the engine compartment. Following the collision, Defendant Newton gave the following written statement to a police officer: "We were going north on IC1001 just passed winford Jct. and was approaching the bridge and saw something, thought it was the sun reflecting off the rails and then seen it was people. Applied the brakes stopped as soon as we could." Defendant Doss also gave a written statement to police:

> Going North at Winford Jct. @ roughly 44 MPH approaching bridge. We saw something on bridge, but could not tell if it was a reflection from the sun on the bridge rails. We applied the brake and when we saw it was people we shot the air and put the train in emergency. Stopping the train as soon as possible.

Kim Johnson testified at deposition that the train did not begin to brake until after impact.

In their Amended Complaint Plaintiffs assert that the negligence of the railroad employees was a substantial factor in the death of Deborah Kay Johnson.  Plaintiffs assert that the Defendants failed to begin braking or slowing the train until after impact.  Defendants assert that Deborah Kay Johnson was a trespasser and as there is no evidence that Defendants discovered her peril and then failed to exercise reasonable care to avoid the collision, Defendants  were not negligent.

"[M]embers of the public who use a railroad trestle or bridge as a footway for their own convenience are trespassers, and their status is not changed into that of licensees by the frequency or extent of such trespassing or the fact that the structure is located in a city or town."  *Vance's Adm'r v. Louisville & Nashville R.R. Co.*, 304 S.W.2d 915, 916 (Ky. 1957).  Thus, Deborah Kay Johnson's status on the bridge was that of a trespasser.  "Under both the statute and common law applicable to trespassers, one has a duty to use ordinary care to prevent harm to one *known* to be in danger."  *List v. S. Ry. Co.*, 752 S.W.2d 791, 792 (Ky. Ct. App. 1988).  In a train accident case there is no duty to discover the presence of someone on the tracks since that person is a trespasser. *Louisville & Nashville R.R. Co. v. Vanderpool*, 496 S.W.2d 349, 351 (Ky. 1973).  The burden is on Plaintiffs to show that the trainmen discovered Deborah Kay Johnson's presence on the bridge in time to have stopped the train and by the exercise of ordinary care in using all available means could have avoided striking her.  *Vance's Adm'r*, 304 S.W.2d at 917.

In *Louisville & Nashville Railroad Co. v. Bell*, the plaintiff sued for damages suffered when she fell from a trestle in order to avoid an oncoming train.  108 S.W. 335, 335 (Ky. 1908).  The plaintiff alleged that those in charge of the train saw her danger and could have avoided the injury to her, after perceiving it, by ordinary care on their part.  *Id.*  The defendants answered, denying the allegations and pleading contributory negligence.  *Id.*  The plaintiff offered proof through two

witnesses that the engineer was in the cab looking out down the track as he approached the trestle, that he had a view of the trestle 325 yards away, that the train could have been stopped in 150 to 200 yards, and that just before reaching the trestle, four or five sharp blasts of the whistle were blown as are usual for an alarm. *Id.* The trainmen testified that the whistling was done for the crossing and that the engineer could only see 150 yards in front of him. *Id.* The fireman testified that although he was looking out and had a view of the trestle, he saw no one on it. *Id.* In finding that there was sufficient evidence for the case to go to the jury, the court stated:

> It is impossible to show what men saw in most cases, except by the circumstances. The fact that the railroad men were looking out at the windows of the cab in the direction in which the plaintiff was on the trestle and sounded an alarm whistle, coupled with the fact that she was in plain view of them and with nothing to obstruct their view, is some evidence that they saw her.

*Id.* at 336.

Here Plaintiffs have presented evidence that there is 2,216.35 feet of unobstructed vision on level terrain to the trestle with another 700 feet of unobstructed vision consisting of the bridge itself, totaling 2,916.35 feet of unobstructed vision to point of impact. Defendants' expert states that the train required approximately 1517 feet to stop once braking was initiated. Defendants' expert indicates that, taking into account a 17-18 second reactionary period, Defendant Doss began to perceive and react to the situation approximately 1283 feet prior to the collision. Defendants have also provided evidence that the train whistle was blown for the crossing prior to the accident site and subsequently in an intermittent pattern in advance of the accident location. There is evidence that the duration of the intermittent horn was over a minute and approximately 4740 feet in advance of the accident. Although Defendants state that the whistle was blown for the crossing, they fail to indicate whether the subsequent intermittent pattern was also conducted for the crossing or for some

5

other type of warning. Also, although there is evidence of how far away from the site of the collision the train was when the whistle first sounded, the Defendants have not stated the position of the train when the whistling ceased.

The Court, resolving all disputed facts in favor of Plaintiffs, finds that there is a colorable basis for predicting that Plaintiffs may recover against Defendant Newton. *See Coyne*, 183 F.3d at 493. Although Plaintiffs have provided evidence that there was 2,916.35 feet of unobstructed vision to point of impact, Defendants' expert stated that Defendant Doss only began to react to the situation approximately 1283 feet prior to the collision. It is unclear at this point what purpose the intermittent horn of the train served, whether that of a customary alarm of crossing or for some other targeted warning. Although Defendants Doss and Newton stated that they applied the brakes of the train immediately after sighting Deborah Kay Johnson, the circumstances provide some evidence that they saw her prior to that point. *See Bell*, 108 S.W. at 336.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.

An appropriate order shall issue.